IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

American Standard, Inc.,                                Case No. 3:07CV02377

      Plaintiff,

   v.                                                                  ORDER

Robert J. Meehan, Jr. et al.,

      Defendants.

This is a tort and contract dispute. Plaintiff American Standard Inc. ["Trane"], which manufactures Trane brand heating, ventilating, and air conditioning [HVAC] systems, claims that defendant Robert J. Meehan, owner of a Trane franchise, Toledo Services, Inc. [jointly, "Toledo Trane"], fraudulently failed to account for monies Toledo Trane owed to the plaintiff. In addition to bringing the instant suit, Trane, providing 30 days notice as required by the franchising agreement between the parties, terminated its franchising agreement with Toledo Trane. Toledo Trane brought counterclaims, alleging that certain guidelines on which plaintiff bases its fraud claims violate the Sherman Anti-Trust Act, 15 U.S.C. SS 1. Jurisdiction is proper pursuant to 28 U.S.C. § 1332.

After answering plaintiff's complaint and filing its counterclaims, Toledo Trane moved for a temporary restraining order and preliminary injunction to prevent Trane from terminating its franchise pending the outcome of this suit. That motion was denied.

1

Pending is Toledo Trane's motion to stay and for a limited injunction that would prevent Trane from effectuating the termination of its franchise agreement with Toledo Trane until the preliminary injunction issues can be heard by the Sixth Circuit on interlocutory appeal [Doc. 36].

For the following reasons, the motion for a stay and limited injunction will be denied as moot, without prejudice.

**Background**

Plaintiff Trane sells its products through either: 1) direct sales on the open market; or 2) distribution to independent franchisees exclusively responsible for various regions throughout the United States.

In 1959, Meehan began working as a salesman for Trane. In 1971, Meehan approached Trane executives expressing interest in opening an independent Trane franchise center. After a series of meetings, Meehan was given the opportunity to establish a Trane franchise in Toledo. Meehan accepted Trane's offer and signed a franchising agreement.

Included in the franchise agreement were two provisions pertinent Toledo Trane's motion for injunctive relief and the pending motion for a stay. The first is that either party may terminate the agreement on thirty days notice to the other party. The second is that "no amendment, supplement or modification [of the contract] shall be of any force and effect unless it is signed in writing and signed by the party to be charged." [Doc. 15]. The contract also provided that Wisconsin law governed all provisions.

Meehan testified that when he began operating his franchise, which had previously been operated by another franchisee, he found the business in dire circumstances. Realizing that substantial investment would be necessary to make the business profitable, he allegedly became

concerned about the thirty day termination clause. If exercised by Trane, Meehan realized he could lose any investment, because he could not transfer the franchise without Trane's approval.

In the Summer of 1971, Maurie Rice, then Midwestern Regional Manager for Trane, visited Meehan to help formulate plans about expanding the franchise. During that visit, as Rice and Meehan were driving through a residential neighborhood, they discussed the termination provision. As described by Meehan, Rice generally communicated that "it was not the custom of Trane to – or operating practice . . . of Trane to terminate without cause." Meehan does not recall the exact words which Rice used. There were no further discussions about the thirty day termination clause during that visit. (Meehan Dep. at 69:12 - 70:9)

At some point during the late 1970s or mid-1980s, according to Meehan, he had a similar conversation with Don O'Keefe, Trane's National Sales Manager, during a Trane Managers meeting.[1] Encountering O'Keefe in a "buffet breakfast line," Meehan asked about Trane's policy pertaining to the termination of its franchises. O'Keefe allegedly responded that "in his experience, Trane had not cancelled a franchise other than for cause." (*Id.* at 82:17 - 23.)

In the mid-1990s, Meehan again allegedly contacted Trane concerning its termination policy. He raised his concerns with Steve Miclette [whose position with Trane is not clear from the record]. Miclette, according to Meehan, responded: "Bob, in the first place, if it comes down to a difference of opinion . . . that Trane would always side with the franchise holder. And that their policy or that he had never seen Trane terminate anybody for a threat like this . . . ." (*Id.* at 90:17 - 92:2.).

Since 1971, Toledo Trane has grown significantly and prospered. In addition to selling Trane products, Toledo Trane sells parts for other manufacturers and manages a separate service division.

---

[1] Trane denominates its franchisees as "Managers."

Toledo Trane's income comes primarily from sales of new commercial HVAC systems [consisting solely of Trane parts]; sales of controls [90% of which are produced by Trane]; and the sale of other Trane manufactured parts. Toledo Trane's service division generates about one-third of its income.

In March, 1992, Trane issued a "Manual of Policies and Procedures" [MOPP] for its franchisees. Two sections of Provision 34b are of particular importance to this case. First, the contract required that all Trane franchises report to Trane sales of non-Trane products and pay Trane a percentage of those sales. Second, through a complicated incentive structure, MOPP 34b set minimum limits on the sale price of all Trane products and maximum limits on the sale price of all non-Trane products.

Meehan acquiesced in these provisions and undertook to follow and implement their requirements.

The events giving rise to this suit began with an audit by Trane of Toledo Trane in June, 2005. Trane alleges that the audit uncovered significant noncompliance by Toledo Trane with the MOPP and a resulting shortfall in payments from Toledo Trane of over a million dollars. Trane thereon exercised the thirty day termination provision of the franchise agreement. In addition, it filed the instant suit.

Following a hearing and post-hearing briefing, I denied Toledo Trane's motion for injunctive relief. [Doc. 35].

Toledo Trane now seeks a stay and a limited injunction to prevent termination of its franchise agreement until the Sixth Circuit is able to review this court's rejection of its request for a restraining order and preliminary injunction. Toledo Trane claims that while it will suffer significant

irreparable injury if the franchise is terminated, "there is no evidence of any irreparable injury to Trane by any short postponement." [Doc. 36 at 6].

## Discussion

### 1. The Applicable Standard

Courts analyze motions for injunctions pending appeal with a four factor test that is essentially the same as the test they use to analyze the general issuance of temporary restraining orders and preliminary injunctions. *See Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991); *see also* Fed. R. C. Proc. 62(c) (Injunction Pending Appeal); Fed. R. App. Proc. 8(a) (Stay or Injunction Pending Appeal; Motion for Stay). This test looks at: 1) whether the movant has a strong or substantial likelihood of success on the merits on appeal; 2) whether the movant will suffer an irreparable harm if the district court proceedings are not stayed; 3) whether staying the district court proceedings will substantially injure other interested parties; and 4) where the public interest lies. *See, e.g., Griepentrog*, *supra*, 945 F.2d at 153.

I applied this test to the parties at bar when I found Toledo Trane's arguments for a temporary restraining order wanting. Toledo Trane now argues, however, that the standard is altered somewhat when viewed through the prism of a motion for a stay. Echoing some of the points made in their motion for a temporary restraining order, Toledo Trane claims that "a movant can satisfy the [substantial likelihood of success on appeal] element where substantial legal questions or matters of first impression are at issue and the equities favor maintaining the status quo." *Simon Property Group, Inc. v. Taubman Center's, Inc.*, 262 F. Supp. 2d. 794, 798 (E.D. Mich. 2003).

Applying this interpretation of the four factor test to an application for a stay, the Sixth Circuit explained that "a movant need not always establish a high probability of success on the

5

merits." *Griepentrog*, *supra*, 945 F.2d at 153. When, for example, the irreparable injury factor greatly favors the movant, he may only be required to show "serious question going to the merits" in order to overcome the likelihood of success factor. *Id.* at 153-54.

### 2. Application of the Alterative "Success on the Merits" Analysis

In my decision denying Toledo Trane's motion for a preliminary injunction, I held that: 1) the likelihood of success on the merits greatly favored Trane; 2) on the irreparable injury factor the balance of harms favored Toledo Trane; 3) the harm to Toledo Trane and its employees substantially outweighed any harm to Trane; and 4) public policy factors favored neither litigant.

The instant motion does not require re-analysis of the harm or public policy factors. While Toledo Trane appears to argue that the process outlined in *Michigan Coalition of Redioactive Material Users v. Griepentrog*, 945 F.2d 150, provides a new means of balancing harms, I am not persuaded that it offers a significantly different analysis; in short, I believe it would lead to the same conclusions as a balancing of harms for a preliminary injunction. *See id.* at 154.

I focus, accordingly, on factor one – whether Toledo Trane has a strong or substantial likelihood of success on the merits on appeal – as the proposed analysis of this factor in the motion to stay context is dispositive.

This proposed analysis required that the movants raise serious questions going to the merits that are not "a mere repetition of arguments previously considered and rejected." *Spargo v. N.Y. State Comm'n on Judicial Conduct* 2003 WL 2002762, at *1(N.D.N.Y. 2003) ("Additionally 'mere repetition of arguments previously considered and rejected cannot be characterized as a "strong showing"' of success on the merits.") (quoting *Schwartz v. Dolan*, 159 F.R.D. 380, 383 (N.D.N.Y.1995)). To meet this requirement, Toledo Trane challenges: 1) this court's failure to

6

consider the evidence of statements made by five senior Trane executives regarding the Trane termination policy; 2) Trane's failure to present any evidence on the modification issue; and 3) this court's use of the conventional four factor test, rather than the defendants' proposed "raises serious questions" test.

It is noteworthy that the cases Toledo Trane cites for the "serious question" interpretation all involve movants asking for a stay *against* the imposition of an injunction. *See Simon Property Group*, *supra*, 262 F. Supp. 2d. 794; *Providence Journal Co. v. Fed. Bureau of Investigation*, 595 F.2d 889 (1st Cir. 1979). When those cases refer to maintaining the status quo, they reference the status of the parties before the court issued its injunction.

In this case, in contrast, Toledo Trane asks that I maintain the status quo by imposing a limited injunction that would prevent Trane from continuing with its plans to terminate its franchise. In other words, rather than asking that the court refrain from enacting its judgment until appellate review has run its course, the defendants' request that the court act to prevent the plaintiff's termination from running its course.

I am not entirely convinced that likelihood of success on the merits should receive the altered treatment that Toledo Trane proposes for stay applications – particularly when the decision preceding the application for a stay was a rejection of a motion for a preliminary injunction. I am, however, persuaded by Toledo Trane's argument that the Sixth Circuit's failure to explicitly reject the "raises serious questions" test in the preliminary injunction context, raises serious questions (if that is in fact the standard) on this motion for a stay.

I would therefore be inclined to issue a limited injunction until the Sixth Circuit has the opportunity to rule on the defendants' motion to stay.[2] *See Planned Parenthood League of Massachusetts v. Bellotti*, 641 F.2d 1006, 1007-08 (1st Cir. 1981) (noting that the district court denied appellants' motion for a preliminary injunction and a stay of enforcement of the relevant statute pending appeal, but granted a ten day stay of enforcement to allow relief to be sought in the First Circuit).

However, maintaining the status quo ante until the Sixth Circuit has an opportunity to decide whether to issue a stay is wholly unnecessary. The parties have agreed to: 1) a timetable for filing of a notice of appeal and motion for a stay and response to such motion and 2) intervening business arrangements that are tantamount to a stay until the Sixth Circuit can review the defendants' expedited request for a stay. This agreement – which lasts only ten business days – moots the instant motion for a stay from this Court. *See Adarand Constructors v. Slater*, 528 U.S. 216, 222 (2000) (explaining when "[v]oluntary cessation of challenged conduct moots a case").

---

[2] This does not in any way indicate that I doubt the analysis in the preceding decision denying the preliminary injunction. For the reasons stated in that opinion I believe that the "serious question" standard does not apply to motions for a preliminary injunction. Furthermore, with regard to Toledo Trane's other "serious questions" about my decision, I am wholly unpersuaded.

Though my decision did not mention the testimony by Trane executives in the Colorado proceeding, I was cognizant of that testimony. It is not relevant to establish valid modification. To prove modification, the basic elements of a contract must be established. Trane executives' general comments about Trane's past policy – comments which were never communicated to Meehan – are irrelevant to whether Trane and Meehan ever actually agreed to modify the franchise agreement. With regard to Trane's failure to provide evidence on the modification issue, Toledo Trane has the burden of persuasion; if it cannot meet that burden, it is not necessary for Trane to offer any evidence.

Whether to issue a more prolonged stay is for the appellate court to determine. All I am trying to do is to give the parties time to get that issue before the Court of Appeals, and to give the Court of Appeals time to decide whether it wants to enter a more protracted stay.

**Conclusion**

For the foregoing reasons, it is hereby

ORDERED THAT the defendants Robert J. Meehan, Jr. and Toledo Trane's motion for a stay and limited injunction be, and is the same hereby, denied as moot, without prejudice.

So ordered.

s/James G. Carr<br>
James G. Carr<br>
Chief Judge