IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Trane U.S. Inc.,                                                 Case No. 3:07CV02377

       Plaintiff,

v.                                                          ORDER

Robert J. Meehan, Jr. et al.,

       Defendants.

In this dispute, plaintiff Trane U.S. Inc. ("Trane"), a manufacturer of heating, ventilating, and air conditioning ("HVAC") systems, claims that defendant Robert J. Meehan and his Trane franchise, Toledo Services, Inc. (collectively "Toledo Trane"), fraudulently failed to account for monies Toledo Trane owed to plaintiff. In addition to bringing the instant suit, Trane terminated its franchise agreement with Toledo Trane, providing thirty days notice as required by the agreement.

Toledo Trane now seeks leave to file a third-party complaint against its sales engineers who were involved in the transactions that Trane alleges violated accounting policies. (Doc. 68). If Trane prevails against Toledo Trane, the latter alleges it will have a claim over against these employees and independent contractors for compensation they received as a result of the accounting improprieties.

For the following reasons, I grant Toledo Trane leave to file the third-party complaint.

**Background**

Prior decisions outline the background of this case. Therefore, in this opinion I summarize that background.

In 1959, Meehan began working as a salesman for Trane. Thirteen years later, he expressed an interest in opening an independent Trane franchise center. After a series of meetings, Trane offered Meehan an opportunity to establish a franchise in Toledo, Ohio. Meehan accepted the offer and signed a franchise agreement.

In the years that followed, Toledo Trane grew and prospered. In addition to selling Trane products, Toledo Trane sold parts for other manufacturers, and managed a separate service division. Toledo Trane's income came primarily from sales of: new commercial HVAC systems (consisting solely of Trane parts); controls (90% of which Trane produced); and other Trane manufactured parts. Toledo Trane's service division generated about one-third of its income.

In March, 1992, Trane issued a "Manual of Policies and Procedures" ("MOPP") for its franchisees. These policies largely affected "bundled sales," which are sales of products that combine Trane and non-Trane components.

Two sections of MOPP provision 34b (MOPP 34b) were of particular importance to these sales: 1) a requirement that all Trane franchises report sales of non-Trane products to Trane and pay Trane a percentage of those sales; and 2) a provision setting, through a complicated incentive structure, minimums on the sale price of all Trane products and maximums on the sale price of all non-Trane products.

Toledo Trane alleges that these provisions set the resale price for non-Trane products so as to maximize Trane's return on bundled sales. As a consequence, Toledo Trane's cost to sales increased and its profit margin decreased. This hurt competition, according to Toledo Trane, because a "break even price on any job is set higher than it would be set absent the extra-contractual predatory restrictions Trane has imposed in MOPP 34b." (Doc. 59 at 13).

In other words, Toledo Trane alleges that, as a result of these mandates under MOPP 34b, it had to enter the marketplace with higher prices to be profitable than it would have had the provisions not been in place.

The events giving rise to this suit began when Trane audited Toledo Trane in June, 2005. Trane alleges the audit uncovered significant noncompliance with the MOPP by Toledo Trane and a resulting shortfall in payments to Trane of over $1,000,000.

Toledo Trane responded by filing numerous counterclaims and seeking a temporary restraining order to prevent Trane from terminating its franchise. Approximately five months after losing its motion for a temporary restraining order, Toledo Trane moves for leave to file a third-party complaint against nine sales engineers. According to Toledo Trane, these employees and independent contractors were involved in the transactions for which Trane alleges Toledo Trane failed to comply with the MOPP. Because the sales engineers "received roughly 50% of the compensation that Trane claims Toledo Trane wrongly received," if Trane prevails, Toledo Trane claims it will have a claim over against the sales engineers. (Doc. 68 at 2).

## Discussion

### Legal Standard

According to Rule 14 of the Federal Rules of Civil Procedure, which regulates third-party practice, a defendant may "serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." This allows "additional parties whose rights may be affected by the decision in the original action to be joined so as to expedite the final determination of the rights and liabilities of all the interested parties in one suit." *AmericanZurich Ins. Co. v. Coopertire & Rubber Co.*, 512 F.3d 800, 805 (6th Cir. 2008).

A defendant may serve a third-party defendant without leave of the court within ten days of serving its original answer. Fed. R. Civ. P. 14(a)(1). After ten days, a defendant may only serve a third-party complaint with leave from the court. *Id.* Whether to allow the third-party claim to proceed "is committed to the discretion of the trial court." *Nipponkoa Ins. Co., Ltd. v, Ozark Motor Lines, Inc.*, 2006 WL 2947467, at *3 (M.D. Tenn.); *see also General Electric v. Irvin*, 274 F.2d 175, 178 (6th Cir. 1960) ("Leave to implead a third-party defendant, under Rule 14(a), is within the discretion of the court."). Generally, however, "timely motions for leave to implead third parties should be freely granted . . . unless to do so would prejudice the plaintiff, unduly complicate the trial, or would foster an obviously unmeritorious claim." *Nova Prods., Inc. v. Kisma Video, Inc.*, 220 F.R.D. 238, 240 (S.D.N.Y.2004) (internal quotations omitted).

A third-party claim is viable "only when the third party's liability is in some way dependent on the outcome of the main claim or when the third party is secondarily liable to defendant. If the claim is separate or independent from the main action, impleader will be denied." C.A. Wright, A. Miller, M.K. Kane, 6 *Fed. Prac. & Proc. Civ. 2d* § 1446 (2008).

**Analysis**

Plaintiff Trane argues that I should deny Toledo Trane's motion because: 1) inclusion of the third-party defendants will entail a dramatic increase in the scope, duration, and expense of the litigation that will prejudice Trane and the third-party defendants; 2) granting the motion may open a Pandora's box of additional third-party defendants if discovery reveals additional accounting improprieties; and 3) providing leave to file the complaint will serve to frustrate, rather than the facilitate, justice.

These concerns are misplaced. First, as the defendant points out, besides limited depositions for the temporary restraining order hearing, there has been no discovery in this case. *Compare Liberty Folder v. Curtiss Anthony Corp.*, 90 F.R.D. 80, 84 (S.D. Ohio 1981) (sustaining motion for leave to file third-party complaint and noting that a motion made "eight months after the action was commenced and six month before the scheduled trial date," is not "necessarily untimely"), *with Asher v. Unarco Material Handling, Inc.*, 2007 WL 2463326, at *3 (E.D. Ky.) ("[I]t is clear that granting the parties' motions would require the parties to re-take depositions, delay pre-trial deadlines, and unnecessarily interject new issues into the litigation."). Potential procedural problems provide no justification for denying the defendant leave in this case.

Substantively, the factual issues in the primary and the third-party complaint overlap: Trane seeks to recover for alleged violations of the MOPP, while Toledo Trane seeks, if necessary, to recover from the salesmen for the same violations. The legal issues are also related. The salesmen's liability is derivative of Toledo Trane's potential liability; whether the salesmen violated fiduciary duties or unjustly enriched themselves will turn on whether Toledo Trane is found liable for non-compliance with the MOPP.

While allowing Toledo Trane to implead the third-party defendants introduces some new issues into the case (e.g. contractual and/or fiduciary duties of the salesmen), there is still "a logical relationship between the third party claims and the 'transaction or occurrence' that is the subject matter of the complaint." *Computrex, Inc. v. Brown*, 2005 WL 1866081, *3 (E.D. Ky.); *see also Baker v. Moors*, 51 F.R.D. 507, 509 (W.D. Ky. 1971) ("The mere fact that ancillary controversy between [third-party plaintiff and third-party defendant] involves a matter of contract, while the

5

primary controversy between plaintiffs and original defendant involves a matter of tort is not an adequate reason to disallow impleader.").

I also cannot reject a suitable third-party complaint because of potential hardships that *may* occur when additional parties are identified via discovery. While, as Trane contends, it may be the case that "[a]s new fraudulent transactions are discovered during the course of discovery, Meehan's third-party practice will undoubtedly escalate to include additional third-party defendants" I will not now base my decision on such conjecture. (Doc. 69 at 4).[1]

Trane's argument that the third-party claims will frustrate the facilitation of justice because they are "only relevant if Meehan and/or his company are found liable on certain of Trane's claims" (Doc. 69 at 4) runs counter to Rule 14 jurisprudence. That rule is designed to only apply in cases where the third-party defendant's liability depends on the third-party plaintiff's liability. In this manner "[t]hird-party pleading is appropriate *only* where the third-party defendant's liability to the third-party plaintiff is dependent on the outcome of the main claim; one that merely arises out of the same set of facts does not allow a third-party defendant to be impleaded." *AmericanZurich*, *supra*, 512 F.3d at 805 (emphasis added); *see also Diar v. Genesco, Inc.*, 102 F.R.D. 288, at 290-91 (N.D.

---

[1]

I note that Trane can, if discovery discloses conduct on Toledo Trane's part that it believes manifests further instances of alleged fraud, avoid any of the complications that it posits: Trane can simply forego seeking to recover its losses from such later-uncovered misconduct. On the other hand, if it seeks to recover from Toledo Trane for such misconduct, simple fairness would dictate allowing Toledo Trane, in turn, to go against those whom it believes responsible for the misconduct. It would also appear likely, at least at this point, that some or all the employees who engaged in any as yet undisclosed fraudulent acts may already be in this suit as a result of granting the instant motion.

Thus, I find Trane's fears about the danger of future procedural tangles overstated. To some extent, moreover, the problems Trane anticipates may be amenable to amelioration, if not avoided entirely, by sequencing discovery to look, first, at whether Toledo Trane's books and records show under payments and, if so, then deposing the responsible individuals to determine their role, if any, in the alleged frauds. That being said, I leave the scope and course of discovery to the parties to schedule.

Ohio 1984); *Asher*, *supra*, 2007 WL 2463326, at *3 (explaining that impleader would transform a due care case into a products liability action).

As previously explained, Toledo Trane's third-party complaint is appropriately founded on the sales engineers' "actual or potential liability to the defendant for all or part of the plaintiff's claim against the defendant." *AmericanZurich*, *supra*, 512 F.3d at 805. Allowing the instant motion implements Rule 14, and does so appropriately under the circumstances of this case.

## Conclusion

For the foregoing reasons, it is hereby

ORDERED THAT

Defendant Robert J. Meehan's motion for leave to file third-party complaint (Doc. 68) be, and is the same hereby, granted.

So ordered.

s/James G. Carr
James G. Carr
Chief Judge